**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DENNIS RHEM,

Plaintiff,

Case No:
Honorable

v

CRAIG W. HORN, an individual and
BRAUN, KENDRICK FINKBEINER P.L.C.,
a Michigan domestic limited liability company,

Defendants.

_______________________________________________/

EDWARD G. LENNON PLLC
Edward G. Lennon (P42278)
Attorney for Plaintiff
322 N. Old Woodward
Birmingham, MI 48009
(248) 723-1276

_______________________________________________/

**COMPLAINT AND JURY DEMAND**

Plaintiff, Dennis Rhem, by and through his attorneys, Edward G. Lennon PLLC, for his Complaint against Defendants, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Dennis Rhem ("Rhem"), is an individual who resides in the State of Texas.

2. Defendant Craig W. Horn ("Horn") is an individual who resides in Michigan and has a principal place of business located in the City of Saginaw, Saginaw County, Michigan.

3. Defendant Braun Kendrick Finkbeiner P.L.C. ("Braun Kendrick"), a law firm, is a Michigan professional corporation with a principal place of business

located in Saginaw, Michigan and which, according to its website, does business all across Michigan. At all relevant times, Horn practiced law under the auspices of Braun Kendrick, and Braun Kendrick is liable for the acts of Craig W. Horn alleged herein under the principals of agency, vicarious liability, and *respondeat superior*.

4. The breach of contract and injury giving rise to this cause of action occurred in Saginaw County, Michigan.

5. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. This Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(1).

## **FACTS**

6. Rhem was formerly a shareholder or member of Rhem-Emmenecker Investments, L.L.C. ("REI"), J.R. Heineman & Sons, Inc. ("Heineman"), and J.R.H. Equipment Co., LLC ("JRH"). He was also an officer in each entity.

7. Prior to the events at issue in this litigation, Heineman was a thriving, profitable general contractor involved in large commercial projects.

8. Rhem is a skilled executive in the construction industry with specialized knowledge and business acumen in the area of large-scale commercial construction.

9. At one time, Rhem was the largest shareholder of Heineman, owning approximately 49% of the company's shares. Rhem also derived substantial income and benefits as an officer and employee of Heineman.

10. Horn and Braun Kendrick served as attorneys for REI, Heineman,

and JRH. They also served as attorneys for the principal owners of those entities, including Rhem.

11. As a result of his association with Heineman, Rhem was subpoenaed to testify before a federal grand jury regarding alleged antitrust violations related to the bidding and building of large commercial projects in the midwest United States.

12. Rhem, who was a client of Braun Kendrick, spoke with Horn, who he believed was a trusted advisor and attorney acting on his behalf. Horn advised Rhem regarding the federal subpoena, his testimony, and Rhem's actions after testifying. During the course of this, Rhem shared with Horn confidential attorney-client matters.

13. Upon information and belief, Horn and Braun Kendrick initiated talks with expert antitrust attorney Michael L. Brown ("Brown") of Alston & Bird, LLP of Atlanta, Georgia to best plan for and avoid liability to Heineman.

14. On May 13, 2008, after consultation with Horn and Brown, Rhem testified under immunity as to his involvement in the day-to-day operations of Heineman and his understanding of the bidding process for large commercial projects at Home Depot. Upon information and belief, Rhem's testimony resulted in the termination of the investigation of Heineman's practices.

15. Upon information and belief, on June 2, 2008, a conference call was held between Brown and certain officers/employees of Heineman to discuss the termination of Rhem.

16. Upon information and belief, prior to June 10, 2008, Horn was

engaged with discussions of certain representatives of Heineman about the termination of Rhem's employment with Heineman.

17. On June 9, 2008, Horn contacted Rhem by telephone and asked Rhem to meet at Horn's office as soon as possible.

18. Rhem met with Horn at Horn's office on June 10, 2008. At no time during the course of this meeting did Horn advise Rhem of the necessity or advisability for Rhem to obtain his own personal, independent counsel. During that meeting, Horn advised Rhem that Rhem should resign his employment with Heineman.

19. During the June 10, 2008 meeting, Horn advised Rhem regarding Rhem's continued association with Heineman, possible conflicts with another shareholder (Daniel Emmenecker) regarding disagreements as to the value of Heineman shares, the "spin" that the company would put on Rhem's departure, and what Rhem could do to transition current projects.

20. On June 12, 2008, Horn reviewed and approved Rhem's draft letter of resignation from Heineman.

21. Based on the advice given by Horn, including Horn's assurances that Rhem would continue to be compensated by Heineman following an anticipated re-purchase of Heineman stock, Rhem resigned his position as CEO and President of Heineman on or about June 13, 2008.

22. On June 13, 2008, Rhem was escorted from Heineman's offices by Daniel Emmenecker. His keys, corporate credit cards, vehicle insurance, and personal items in his office were confiscated or canceled without any prior notice.

23. On June 14, 2008, Rhem wrote to Horn via e-mail describing his embarrassing removal from the corporate offices and questioning if he should have sought other counsel. Horn responded by writing that "This is uncharted waters for these guys. Don't read too much into it, I'll make sure you get all the stuff you need."

24. At about this time, two separate but related entities to Heineman, REI and JRH, also refused to acknowledge Rhem even though he was a member of each company.

25. Rhem retained new counsel in an attempt to obtain re-employment with Heineman and otherwise resolve issues existing between Rhem, on one hand, and Heineman, REI and JRH, on the other hand. Horn represented Heineman, REI and JRH in these matters adverse to Rhem.

26. The various parties were unable to resolve their differences and the following litigation ensued: (a) Michael A. Emmenecker v Daniel T. Emmenecker and Dennis J. Rhem, Saginaw County Circuit Court, case number 08-2618-CK-5 ("2008 Case"); and (b) Dennis Rhem v Rhem–Emmenecker Investments, L.L.C., et al, United States District Court, Eastern District of Michigan, Northern Division, case number 09-cv-10144 ("2009 Case"). (Collectively, these two cases may be referred to as the "Lawsuits").

27. In the 2008 Case, Michael Emmenecker asserted claims against Rhem and Daniel Emmenecker based on promissory notes and personal guarantees executed in connection with the purchase of Michael Emmenecker's shares in Heineman.

28. In the 2009 Case, Rhem asserted the following claims: (1) breach of the Shareholder Agreement as to Heineman, seeking at least $1,296,878.40 (Count I); (2) breach of the REI Operating Agreement, seeking at least $143,227.00 (Count II); (3) breach of the JRH Operating Agreement, seeking at least $51,818.00 (Count III); (4) wrongful discharge as to Heineman (Count IV); and (5) demand for an accounting (Count V).

29. Eventually, the Lawsuits were resolved by way of a settlement agreement and mutual release executed by and among Rhem, Daniel T. Emmenecker, Heineman, and JRH (the "Settlement"). Pursuant to the Settlement, Daniel T. Emmenecker and JRH assumed Rhem's indebtedness otherwise due Michael Emmenecker and transferred to Rhem certain life insurance policies (at least one of which had a loan taken against it). In exchange for this, pursuant to the Settlement, Rhem: (a) transferred funds in the amount of $124.293.37 in a Merrill Lynch account to JRH; and (b) transferred his interest in Heineman and JRH to Daniel T. Emmenecker.

**COUNT I - LEGAL MALPRACTICE**

30. As attorneys for Rhem, Defendants owed Rhem the duties to do that which attorneys of ordinary learning, judgment or skill would or would not do under the same or similar circumstances.

31. Defendants breached their duties owed to Rhem and committed legal malpractice by:

a. conspiring with Daniel Emmenecker, and others to terminate Rhem's employment with Heineman and to wrongfully withhold, convert and/or otherwise abscond with the monies lawfully due Rhem upon the

termination of his employment;

b. advising Rhem to resign as an employee of Heineman;

c. providing advice to Rhem regarding Rhem's status with Heineman while at the same time representing Heineman;

d. failing to advise Rhem to obtain independent counsel to represent Rhem relative to Rhem's relationship with Heineman, REI, and JRH;

e. failing to ensure that Rhem's economic interests were protected prior to Rhem's resignation from Heineman;

f. representing to Rhem that he would likely convince Michael Emmenecker not to accelerate the amount due from Rhem under a promissory note following Rhem's resignation;

g. continuing to represent Heineman, REI and JRH in matters adverse to Rhem after Rhem's resignation from Heineman without first obtaining a knowing waiver of conflict of interest; and

h. engaging in other acts of malpractice that may be ascertained during discovery in this matter.

32. As a direct and proximate result of Defendants' malpractice set forth above, Rhem has incurred at least the following damages: (a) loss of salary, benefits, and other income derived from his employment with Heineman; (b) loss of his ownership interest in Heineman, REI and JRH; (c) loss of certain life insurance policies; (d) losses attributed to the fire sale of assets following his resignation from Heineman; and (e) attorney fees and costs in attempting to rectify the problems created as a result of Defendants' legal malpractice. Additionally, Rhem has incurred mental anguish and emotional distress as a

result of the losses set forth above that were created by Defendants' legal malpractice.

Wherefore, Plaintiff prays for a judgment against Defendants, jointly, awarding:

a. actual damages in excess of $25,000;
b. costs, interest and attorney fees; and
c. exemplary damages as permitted by law.

**COUNT II – BREACH OF FIDUCIARY DUTIES**

33. Rhem hereby incorporates the allegations contained in paragraphs 1 - 32 as if set forth herein in there entirety.

34. Rhem reposed faith, confidence and trust in Horn, Based upon this, as well as the fact that Rhem was a significant owner of REI, Heineman and JRH, there existed a fiduciary relationship between Defendants and Rhem.

35. Defendants breached their fiduciary duties owed to Rhem by:

a. conspiring with Daniel Emmenecker, and others to terminate Rhem's employment with Heineman and to wrongfully withhold, convert and/or otherwise abscond with the monies lawfully due Rhem upon the termination of his employment;

b. advising Rhem to resign as an employee of Heineman;

c. providing advice to Rhem regarding Rhem's status with Heineman while at the same time representing Heineman;

d. failing to advise Rhem to obtain independent counsel to represent Rhem relative to Rhem's relationship with Heineman, REI, and JRH;

e. failing to ensure that Rhem's economic interests were protected prior to Rhem's resignation from

Heineman;

f. representing to Rhem that he would likely convince Michael Emmenecker not to accelerate the amount due from Rhem under a promissory note following Rhem's resignation;

g. continuing to represent Heineman, REI and JRH in matters adverse to Rhem after Rhem's resignation from Heineman without first obtaining a knowing waiver of conflict of interest; and

h. engaging in other breaches of fiduciary duties that may be ascertained during discovery in this matter.

36. As a direct and proximate result of Defendants' breaches of fiduciary duties set forth above, Rhem has incurred at least the following damages: (a) loss of salary, benefits, and other income derived from his employment with Heineman; (b) loss of his ownership interest in Heineman, REI and JRH; (c) loss of certain life insurance policies; (d) losses attributed to the fire sale of assets following his resignation from Heineman; and (e) attorney fees and costs in attempting to rectify the problems created as a result of Defendants' legal malpractice. Additionally, Rhem has incurred mental anguish and emotional distress as a result of the losses set forth above that were created by Defendants' breaches of fiduciary duties.

Wherefore, Plaintiff prays for a judgment against Defendants, jointly, awarding:

a. actual damages in excess of $25,000;
b. costs, interest and attorney fees; and
c. exemplary damages as permitted by law.

**COUNT III – INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS**

37. Rhem hereby incorporates the allegations contained in paragraphs 1 - 36 as if set forth herein in there entirety.

38. Rhem's employment with Heineman constituted an advantageous business relationship.

39. Rhem's employment with Heineman was likely to continue into the future, either as President/CEO or in some other capacity, providing substantial economic benefits to Rhem.

40. Defendants were aware of Rhem's employment with Heineman.

41. Defendants intentionally and improperly interfered with Rhem's employment relationship with Heineman by recommending that Rhem resign his employment with Heineman, and by not taking any steps to ensure that Rhem's economic interests were protected at the time of any such resignation.

42. Based upon the advice given by Defendants, including Horn's assurances that Rhem would be properly compensated, Rhem resigned his position as CEO and President of Heineman on or about June 13, 2008.

43. Although Horn promised Rhem that he would be compensated should he resign from Heineman, Heineman refused to compensate Rhem following Rhem's resignation of his employment.

44. Because Heineman refused to compensate Rhem following Rhem's resignation as President and CEO, Rhem has lost salary, benefits and other income derived from his employment with Heineman.

Wherefore, Plaintiff prays for a judgment against Defendants, jointly, awarding:

a. actual damages in excess of $25,000;
b. costs, interest and attorney fees; and
c. exemplary damages as permitted by law.

Respectfully submitted,

EDWARD G. LENNON PLLC

_/s/Edward G. Lennon____
EDWARD G. LENNON (P42278)
Attorney for Plaintiff
322 N. Old Woodward
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: January 5, 2010

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

EDWARD G. LENNON PLLC

_/s/Edward G. Lennon____
EDWARD G. LENNON (P42278)
Attorney for Plaintiff
322 N. Old Woodward
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: January 5, 2010